IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Craig Holmes,

      Plaintiff,  Case No. 1:16-cv-01161

v.          Michael L. Brown
          United States District Judge
M. Bivins,

      Defendant.

_____/

## OPINION & ORDER

This litigation arose from Plaintiff Craig Holmes's arrest after Defendant M. Bivins allegedly entered and removed him from his home. (Dkt. 6 ¶ 1.) Plaintiff dismissed his claims against two Defendants, Pembrooke Homeowners, Inc. and Tony Aquila, and only his claims against Defendant M. Bivins remain. (Dkt. 84.) Plaintiff has moved for default judgment against Defendant Bivins. (Dkt. 90.)

**I. Background**

In November 2015, Plaintiff lived in a rooming and boarding house that Pembrooke Homeowners, Inc. ("Pembrooke") operated. (Dkt. 6 ¶¶ 5–6.) Plaintiff paid Pembrooke $600 in October. (*Id.* ¶ 7.)

Pembrooke's agents allegedly asked Plaintiff to leave the boarding house, but Plaintiff refused to do so until Pembrooke returned his $600 payment. (*Id.* ¶ 8.)

On November 11, 2015, Plaintiff was in the Pembrooke Townhomes playing his music very loudly. (*Id.* ¶ 10.) Defendant Bivins was allegedly called to the boarding house to arrest Plaintiff for criminal trespass. (*Id.* ¶ 12.) Defendant Bivins knocked and demanded that Plaintiff open his door. (*Id.* ¶ 13.) Plaintiff responded that he had a right to stay until Pembrooke returned his money. (*Id.* ¶ 14.)

Defendant Bivins allegedly obtained the key to the premises from Tony Aquila, entered Plaintiff's home without a warrant, and arrested Plaintiff. (*Id.* ¶ 16.) Defendant Bivins later served Plaintiff with a warrant for criminal trespass. (*Id.* ¶ 17.) Plaintiff asserts that Defendant Bivins did not tell the magistrate judge who issued the warrant that Plaintiff was a tenant at the boarding house, not a guest. (*Id.* ¶ 18.)

Plaintiff was incarcerated for twenty-one days. (*Id.* ¶ 19.) He was charged with criminal trespass, but the proceedings against him were eventually dismissed. (*Id.* ¶¶ 41–42.)

In April 2016, Plaintiff filed his application for leave to proceed in forma pauperis and his complaint, asserting five state law claims and four federal claims, under 42 U.S.C. § 1983, for violations of the Fourth Amendment. (Dkts. 1, 3.) The Court conducted a frivolity review and dismissed Plaintiff's federal claims because they failed to state a claim upon which relief could be granted or were barred by qualified immunity. (Dkt. 5 at 1, 12.) The Court allowed Plaintiff to file an amended complaint to address these issues. (*Id*. at 12.)

In September 2017, the Court ordered Plaintiff to file proof that service was waived or effectuated on Defendant M. Bivins. (Dkt. 52.) Plaintiff did so on October 19, 2017. (Dkt. 58.) His proof of service states Defendant Bivins was served on October 16, 2017. (*Id.*)

In Plaintiff's amended complaint he asserts § 1983 claims for unlawful search and seizure under the Fourth and Fourteenth Amendments (Counts 1 and 5); a Fourth Amendment violation under *Franks v. Delaware*, 438 U.S. 154 (1978), (Count 6); and malicious prosecution (Count 7). Plaintiff also asserts state law claims for unlawful search and seizure in violation Article I, Section I, ¶ XIII of the Georgia Constitution (Count 2); violation of Plaintiff's "right of privacy" (Count

3

3); wrongful eviction (Count 4); attorneys' fees and punitive damages (Count 8); and a violation of the Georgia Fair Business Practices Act of 1975 ("FBPA") (Count 9). (Dkt. 6.)

In a second round of frivolity review, the Court dismissed Counts 2 and 8 in the amended complaint, but allowed Counts 1, 3–7, and 9 to proceed. (Dkt. 8 at 18.)

Plaintiff served Bivins on October 16, 2017. (Dkt. 58 at 1.) Bivins did not file an answer to Plaintiff's complaint or make an appearance in this proceeding. In December 2017, Plaintiff moved for default judgment against Bivins. (Dkt. 72.) The Court denied Plaintiff's motion because he failed to first seek an entry of default from the Clerk under Rule 55(a) of the Federal Rules of Civil Procedure. (Dkt. 86.) Plaintiff then moved for a clerk's entry of default, which the Clerk entered in May 2019. (Dkt. 89.) Plaintiff has again moved for default judgment as to M. Bivins. (Dkt. 90.) Defendant M. Bivins did not respond to the motion.

In June 2018, Plaintiff settled his claims against Defendants Tony Aquila and Pembrook Homeowners, Inc. and dismissed his claims against these defendants with prejudice. (Dkts. 83–84.)

## II. Legal Standard

If a defendant fails to plead or otherwise defend a lawsuit within the time required by the Federal Rules of Civil Procedure and the plaintiff moves for default, the clerk must enter default. *See* FED. R. CIV. P. 55(a). Default constitutes admission of all well-pleaded factual allegations in the complaint but not an admission of facts incompletely pleaded or conclusions of law. *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005).

Once the clerk enters default, the court has discretion in determining whether to enter judgment. *See Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985) ("The entry of a default judgment is committed to the discretion of the district court . . . ."). Default judgments are generally disfavored because there is a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015) (quoting *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003)). A court enters default judgment only when "there is 'a sufficient basis in the pleadings for the judgment entered.'" *Id.* at 1245 (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Also, when assessing

5

default judgment damages, the court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007).

The standard for determining the sufficiency of the basis for the judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245 (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere conclusory statements cannot satisfy the plaintiff's burden. *Id.*

### III. Discussion

Applying the same standard that a court would apply when deciding a motion to dismiss, or the present motion for default judgment, and reading the amended complaint in the light most favorable to Plaintiff,[1] the Court dismissed Counts 2 and 8 in the amended complaint

---

[1] During frivolity review under 28 U.S.C. § 1915(e)(2)(B), the Court noted that failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the

and allowed Counts 1, 3–7, and 9 to proceed. (Dkt. 8.) Plaintiff dismissed Count 9, as he alleged that claim only against Pembrooke and Aquila. The only remaining issues that the Court needs to address upon Plaintiff's motion for default judgment are whether federal qualified immunity or official immunity under Georgia law bar Plaintiff's claims against Bivins and the amount of damages Plaintiff may recover.

### A. Qualified Immunity

The Court first addresses Plaintiff's claims under 42 U.S.C. § 1983, which are subject to a defense of qualified immunity. "Qualified immunity protects government officials from individual liability for job-related conduct unless they violate clearly established law of which a reasonable person would have known." *Abercrombie v. Beam*, 728 F. App'x 918, 927 (11th Cir. 2018) (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)). "It serves the purpose of allowing government

---

same standard as dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 8 at 4.) Under the applicable standard during frivolity review, and the standard that applies here, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (Dkt. 8 at 5 (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)).)

7

officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Id.* (quoting *Carter v. Butts Cty.*, 821 F.3d 1310, 1318–19 (11th Cir. 2016)). A discretionary function is one that, "but for the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). The plaintiff meets this burden by establishing (1) that the facts, taken in the light most favorable to the plaintiff, demonstrate that the official's conduct violated the plaintiff's constitutional rights, and (2) that the right allegedly violated was clearly established. *See id.*

There is no doubt that Bivins, as a police officer, acted within his discretionary authority when he arrested Plaintiff. *See Crosby*, 394 F.3d at 1332. This arrest forms the basis of the unlawful search and seizure and false arrest. Bivins also acted within his discretionary authority when he applied for the arrest warrant that forms the basis of Plaintiff's malicious prosecution claim and his claim under *Franks v. Delaware*, 438

U.S. 154 (1978). *See, e.g.*, *Wilson v. Stowe*, No. 1:15-CV-109 (LJA), 2017 WL 969971, at *4 (M.D. Ga. Mar. 13, 2017) ("Courts commonly hold that investigators are acting within their discretionary authority when they file affidavits and apply for arrest warrants, even if the warrants are unfounded."). The burden thus shifts to Plaintiff to show that Bivins should be deprived of qualified immunity based on his actions.

In its prior order, the Court determined that Plaintiff's complaint, when taken as true and viewed in the light most favorable to him, contains allegations establishing that his arrest violated well-known constitutional rights. The Court found that Plaintiff sufficiently alleged the unlawful search and seizure of his home and malicious prosecution in violation of the Fourth Amendment. (Dkt. 8 at 6–7, 10–11, 13–14.) As the Court noted,

> Plaintiff alleges that he was a lawful tenant at the Facility, that Plaintiff explained this to Bivins, that Bivins arrested him without investigating whether Plaintiff's statement was true, that Bivins obtained a warrant by omitting Plaintiff's statement, that Plaintiff was prosecuted for the offense of criminal trespass pursuant to the warrant, that Plaintiff was incarcerated for twenty-one (21) days, and that the criminal action was ultimately dismissed.

(*Id.* at 13–14.) Based on these conclusions, Plaintiff has sufficiently alleged in the amended complaint that there was no probable cause or

9

arguable probable cause when the arrest took place. These allegations state constitutional violations that defeat Defendant Bivins's qualified immunity. Plaintiff is thus entitled to default judgment against Defendant Bivins on his § 1983 claims.

## B. Official Immunity

Plaintiff also asserts several Georgia law claims against Bivins, including violation of Plaintiff's right to privacy, wrongful eviction, violation of the Georgia fair business practices act, and requests for punitive damages and attorneys' fees.

Under Georgia's doctrine of official immunity, state public officials are not personally liable for discretionary acts performed within the scope of their official authority. *See Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001). Public officials do not enjoy official immunity under Georgia law, however, when "they act with actual malice or with actual intent to cause injury in the performance of their official functions." GA. CONST. art. I, § 2, ¶ IX(d); *see also Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007). "Actual malice . . . denotes 'express malice,' i.e., a deliberate intention to do wrong, and does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others." *Murphy*, 647 S.E.2d

at 60 (quoting *Merrow v. Hawkins*, 467 S.E.2d 336, 337 (Ga. 1996)). Although "ill will" may contribute to a finding of actual malice, "its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal." *Abercrombie*, 728 F. App'x at 927 (quoting *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999)).

"Under Georgia law, the record may support an inference of actual malice where evidence indicates that the police officer arrested the plaintiff despite having knowledge that the plaintiff did not commit the crime for which he was arrested." *Id.* "However, the mere lack of probable cause does not permit an inference of actual malice." *Id.* at 928 (citing *Anderson v. Cobb*, 573 S.E.2d 417, 419 (Ga. Ct. App. 2002)). "Similarly, allegations of an improper or inadequate investigation do not, without more, show actual malice." *Id.*

Deciding to make an arrest or seek an arrest warrant are discretionary acts. *See Adams v. Carlisle*, 630 S.E.2d 529, 549 (Ga. Ct. App. 2006); *see also Anderson*, 573 S.E.2d 417, 419 (Ga. Ct. App. 2002)). Bivins, therefore, is immune from suit unless he acted with actual malice. Plaintiff alleges Bivins did not investigate whether Plaintiff had a right

to stay at the premises and failed to tell the magistrate judge that he was Pembrooke's tenant. (Dkt. 6 ¶¶ 15, 18.) These allegations alone are insufficient to establish actual malice as Plaintiff has not shown Bivins acted with the deliberate intent to commit a wrongful act or to harm Plaintiff. *Cf. Abercrombie*, 728 F. App'x at 928 (finding that neither the mere lack of probable cause nor allegations of an improper or inadequate investigation, without more, show actual malice); *Anderson*, 573 S.E.2d at 419 (finding officer's failure to investigate further did not show the officer acted with actual malice).

In *Abercrombie*, the Eleventh Circuit similarly found that an officer was entitled to official immunity under Georgia law, but not to qualified immunity under federal law. 728 F. App'x at 928. The Eleventh Circuit explained

> [q]ualified immunity is evaluated based on an objective standard of reasonableness and "evidence of improper motive is irrelevant to . . . [the] analysis." *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000); *see Kingsland*, 382 F.3d at 1229 ("[T]he constitutional reasonableness of a police investigation does not depend on an officer's subjective intent or ulterior motive in conducting the investigation . . . ."). Official immunity, by contrast, is based on a subjective standard of "actual malice," which means a "deliberate intention to do wrong." *See Murphy*, 647 S.E.2d at 60.

*Id.* The facts here, like those in *Abercrombie*, "show objectively unreasonable investigatory conduct but no deliberate intention to do wrong." *Id.*

The Court finds Bivins is entitled to official immunity regarding Plaintiff's state-law claims, and that Plaintiff is thus not entitled to default judgment on his state-law claims.

### C. Damages

In Counts 1 and 7 in his amended complaint, Plaintiff sought both actual damages and punitive damages under § 1983 for Bivins's alleged violations of Plaintiff's constitutional rights. In his motion for default judgment, however, Plaintiff only seeks $650,000 in "actual pain and suffering damages," including $150,000 in damages due to Bivins's unlawful search and $500,000 due to the malicious prosecution. (Dkt. 90 at 9–10.)

"[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Comm. Sch. Dist. v. Stachura,* 477 U.S. 299, 306, (1986). "Although § 1983 addresses only constitutional torts, § 1983 defendants are, as in

13

common law tort suits, responsible for the natural and foreseeable consequences of their actions." *Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000).

The Court may not enter a judgment by default without a hearing unless the amount of damages is a liquidated sum or one capable of mathematical calculation. *See* FED. R. CIV. P. 55(b); *Jenkins v. Clerk of Court*, 150 F. App'x 988, 989 (11th Cir. 2005). The Court thus declines to enter default judgment at this time without an evidentiary hearing to prove the actual amount of damages.

## IV. Conclusion

The Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Default Judgment as to M. Bivins (Dkt. 90). The Court **SETS** a hearing to determine the amount of damages pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for September 16, 2019, at 2:00 p.m. in Courtroom 1906, Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303. The Court **ORDERS** Plaintiff to appear at the hearing. The Court **DIRECTS** Plaintiff to discuss and provide evidence of the factual basis for the amount of damages he claims in his Motion for Default Judgment (Dkt. 90) at the hearing. Though

14

Defendant M. Bivins is in default, he is permitted to participate in the damages hearing.

**SO ORDERED** this 27th day of August, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE